# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE - NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER GANN, LEANDRE BISHOP, KEVIN BURKE, ELISA CABEBE, ISRAEL CHIA, KRISTA COSTA, HILLARY DICK, JURA GERALD, SEIJI SILER-HYATTE, JEANINE INGRASSIA, ARNIKA IRELAND, MONTELL JONES, MICHAEL KANZLER, ALEXANDRA MCCULLOUGH, TERESE MIRANDA, AUTUMN PIERCE, ROBERT H. WEINBERG, LASHANDRIKA WILLIAMS, AND LAURA WINDOM, individually and on behalf of all others similarly situated, | Case No. 3:18-cv-00966 <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |
| Plaintiffs, | |
| v. | District Judge Eli Richardson <br> Courtroom 874 <br> Magistrate Judge Alistair E. Newbern <br> Courtroom 774 |
| NISSAN NORTH AMERICA, INC., a California corporation, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   HISTORY OF THE LITIGATION ........................................................................3

      A.  The Litigation .................................................................................................3

      B.  Settlement Negotiations .................................................................................7

      C.  Preliminary Approval Order............................................................................8

III.  THE SETTLEMENT.............................................................................................9

      A.  The Settlement Class ......................................................................................9

      B.  Settlement Benefits .........................................................................................9

          1.   Extended Warranty Coverage ................................................................9

          2.   Reimbursement for Qualifying Transmission Repairs...........................10

          3.   Vouchers for Certain Former Owners...................................................11

          4.   Expedited Resolution Process for Future Transmission Claims .............12

          5.   The Costs of Notice and Settlement Administration................................12

          6.   Attorneys' Fees, Costs, and Expenses, and Representative
               Plaintiff Service Awards .....................................................................12

      C.  The Court-Approved Notice Program Was Highly Effective .......................13

IV.   ARGUMENT ......................................................................................................15

      A.  The Class Should Be Certified for Settlement Purposes Only......................16

      B.  The Settlement Is Fair, Reasonable, and Adequate.......................................16

          1.   The Settlement Was Negotiated at Arm's Length by Experienced
               Class Action Attorneys Who Adequately Represented the Class ...........16

          2.   The Settlement Benefits Are Excellent Considering
               the Risks, Costs, and Likely Duration of Continued Litigation ..............18

3.    The Method of Distributing Relief Supports Final
      Approval of the Settlement ........................................................................20

4.    The Terms of the Proposed Award of Attorneys'
      Fees Support Final Approval of the Settlement ......................................21

5.    The Settlement Treats All Class Members Equitably ..............................22

V.   CONCLUSION ....................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ..............................................................17

*Applegate-Walton v. Olan Mills, Inc.*,
  No. 3:10-cv-00224, 2010 U.S. Dist. Lexis 77965 (M.D. Tenn. Aug. 2, 2010) ........................18

*Chambers v. Whirlpool Corp.*,
  No. CV11-1733, 2016 WL 5922456 (C.D. Cal. Oct. 11, 2016) ................................16

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................15

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..............................................................................13

*Gascho v. Global Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ..............................................................................18

*Grant v. Capital Mgmt. Servs., L.P.*,
  No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ........................................20

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .........................................................................15

*In re Sunrise Sec. Litig.*,
  131 F.R.D. 450 (E.D. Pa. 1990) ............................................................................20

*In re Southeastern Milk Antitrust Litig.*,
  No. 08-MD-1000, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ............................................19

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ............................................................................13

*UAW v. GMC*,
  497 F.3d 615 (6th Cir. 2007) ..............................................................................15

Weinberger v. Kendrick,
  698 F.2d 61 (2d Cir. 1982) .................................................................................20

## Statutes and Other Authorities

Fed R. Civ. P. 23 ...................................................................................................15

Fed. R. Civ. P. 23(a) ........................................................................................8, 16

Fed. R. Civ. P. 23(b) .................................................................................8, 13, 16

Fed. R. Civ. P. 23(c) .......................................................................................9, 13

Fed. R. Civ. P. 23(e) ........................................................................15, 16, 20–22

Fed. R. Civ. P. 23(h) ...................................................................................13, 22

*Newberg on Class Actions* § 13:44 (5th ed. 2015) .......................................15

*Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) .13

## I. INTRODUCTION

The Settlement provides extraordinary relief for Class Members and resolves this litigation relating to Plaintiffs' claims that approximately 1.4 million model year 2013–2016 Nissan Altima vehicles ("Class Vehicles") were equipped with defective continuously variable transmissions ("CVTs").[1] After briefing and due consideration, on July 16, 2019, the Court granted preliminary approval of the Settlement, finding the Settlement within the range of likely approval as fair, reasonable, and adequate, conditionally certifying the Class for settlement purposes only, and directing that the settlement administrator, Kurtzman Carson Consultants LLC ("KCC") provide Notice to the Class in accordance with the Notice Program. Preliminary Approval Order of Class Action Settlement, ECF 78 ("Preliminary Approval Order").

The Settlement extends powertrain coverage for transmission repairs under Class Vehicles' New Vehicle Limited Warranty by 24 months or 24,000 miles (the "Warranty Extension Period"), enabling Class Members to seek under-warranty transmission repairs until 84 months after the first sale of their vehicle or 84,000 miles, whichever occurs first (the "Extended Warranty").[2] The Settlement entitles Class Members to claim and receive reimbursement from Nissan North America, Inc. ("NNA") of the full amount they actually paid for parts and labor to an authorized Nissan dealer (or up to $5,000 paid to a non-NNA automotive repair facility) to have their Class Vehicle's transmission repaired or replaced (i) during the Warranty Extension Period, or (ii) prior to January 30, 2020, or the vehicle reaching 90,000 miles, whichever occurs first, if an authorized Nissan dealer diagnosed and recommended repair of the vehicle's transmission during the

---

[1] The definitions in the Settlement (ECF 66-1) are incorporated herein by reference.

[2] As used herein, "transmission" means a Class Vehicle's transmission assembly (including valve body and torque converter) and/or Automatic Transmission Control Unit ("ATCU").

1

Warranty Extension Period. The Settlement also provides that former Class Vehicle owners who had two or more transmission repairs (other than software updates/reprogramming) or replacements performed while they owned the vehicle and who, if eligible, opted not to submit a claim for reimbursement, shall receive a $1,000 Voucher from NNA usable towards the purchase or lease of a new Nissan or Infiniti vehicle.

NNA's commitment under the warranty extension and reimbursement provisions of the Settlement is uncapped. Plaintiffs' expert, Lee M. Bowron, ACAS, MAAA, estimates the retail value to the Class of the Extended Warranty and reimbursement coverage to be $444,471,000. That valuation does not include other components of the Settlement, such as the Vouchers provided to certain former Class Vehicle owners or the costs of settlement administration.

The Court-approved Notice Program has been highly effective. Summary Postcard Notice of the Settlement was successfully mailed to more than 2.5 million Class Members and a Settlement website and toll-free number were established. Class Members' reaction to the Settlement has been overwhelmingly positive. Of the nearly 2.7 million Class Members identified, only 288 opt-out requests and 15 objections have been received.[3]

For the foregoing reasons and as explained more fully below, the Settlement is fair, reasonable, and adequate, and should be granted final approval, and the Class should be certified for settlement purposes only.

---

[3] Opt-Out requests and objections to the settlement must be postmarked or filed with the Court no later than February 7, 2020, respectively. Preliminary Approval Order ¶¶ 14, 17. Plaintiffs will file a response addressing all objections to the Settlement no later than February 21, 2020. *See* Preliminary Approval Order ¶ 22.

## II. HISTORY OF THE LITIGATION

### A. The Litigation

The Settlement was reached after hard-fought litigation, extensive investigation and discovery, consultation with experts, and mediation assisted by a highly respected mediator.[4] Plaintiffs allege that Class Vehicles were equipped with defective CVTs rendering the vehicles prone to shuddering, jerking, lagging when accelerating, stalling, unusual noises, and premature transmission failure. Second Amended Complaint ¶ 1, ECF 59. The alleged defect could pose safety concerns, because if shuddering occurs, a Class Vehicle's rate of speed may drop or the vehicle may stall without the brake lights illuminating. *Id.* It could also result in sudden and unexpected transmission failure, rendering a driver stranded and without use of their Class Vehicle until a new transmission is installed. *Id.* ¶¶ 1, 12, 32.

Five class action cases were filed in federal courts located in Illinois, California, Massachusetts, and Tennessee asserting various claims against NNA relating to Class Vehicles' allegedly defective CVTs. Barnow Decl. ¶¶ 8–37. Nissan has a history of aggressively defending class action lawsuits brought against it. This litigation was no exception.

*Weinberg v. NNA*. On December 8, 2017, Robert Weinberg filed a class action complaint in the United States District Court for the Northern District of Illinois asserting claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"), Illinois Consumer Fraud Act ("ICFA"), and for breach of express warranty. Barnow Decl. ¶ 8. Nissan moved to dismiss

---

[4] These efforts are detailed in the Declaration of Ben Barnow ("Barnow Decl.), filed herewith as Exhibit A. The history of the litigation is also described in the Declarations of Timothy G. Blood (ECF 66) ("Blood Decl.") and Marc Godino (ECF 67) ("Godino Decl.") filed in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, Certification of Settlement Class, and Approval of Class Notice. The Blood and Godino declarations are incorporated herein by reference.

Weinberg's complaint and, after briefing and due consideration, the Illinois court upheld Weinberg's MMWA and express warranty claims, while dismissing his ICFA and implied warranty claims without prejudice. Barnow Decl. ¶¶ 10, 14, 17.

In response to the Court's decision, on October 19, 2018, Weinberg moved for leave to file an amended class action complaint alleging additional facts in support of his ICFA and implied warranty claims. Barnow Decl. ¶ 18. After the court granted Weinberg's request, NNA moved dismiss Weinberg's amended complaint and Weinberg opposed NNA's motion. Barnow Decl. ¶¶ 18–19. On June 19, 2019, the Illinois court entered an Order staying the *Weinberg* case pending the Settlement approval process in this matter. Barnow Decl. ¶ 20.

*Cabebe v. NNA*. On January 8, 2018, Elisa Cabebe filed a class action complaint in the United States District Court for the Northern District of California asserting claims under California's Consumers Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), MMWA, California's Song-Beverly Consumer Warranty Act ("CSBCWA"), and for fraudulent omissions and breach of express warranty. Barnow Decl. ¶ 21. NNA responded by moving to dismiss Cabebe's complaint. Barnow Decl. ¶ 21.

On April 19, 2018, Elisa Cabebe, Hillary Dick, Israel Chia, and Alexandra McCullough filed an amended class action complaint asserting claims under the CLRA, UCL, MMWA, CSBCWA, New York's General Business Law for Deceptive Acts or Practices ("NY GBL"), Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), and for fraudulent omissions, breach of express warranty, and breach of implied warranty of merchantability. Barnow Decl. ¶ 22. On May 9, 2018, NNA responded by moving to dismiss the amended complaint. Barnow Decl. ¶ 22. After full briefing, on October 26, 2018, the California court denied NNA's motion to dismiss in substantial part, dismissing without prejudice

4

only the fraudulent omissions claims under New York and Pennsylvania law and the New York General Business Law Section 349 claim. Barnow Decl. ¶ 23.

On December 19, 2018, Elisa Cabebe, Hillary Dick, Israel Chia, Alexandra McCullough, Montell Jones, Kevin Burke, Arnika Ireland, Evelyn Monroe, Jeanine Ingrassia, Seiji Siler-Hyatte, Lashandrika Williams, Laura Windom, and Michael Kanzler filed a corrected second amended complaint (the "*Cabebe* SAC") asserting claims under the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1, *et seq.*, Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44- 1521, *et seq.*, CLRA, UCL, MMWA, ICFA, Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*, New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, NY GBL, UTPCPL, Texas Deceptive Trade Practices Act, Tex. Bus. Code §§ 17.41, *et seq.* ("TDTPA"), and for breach of express warranty, fraudulent omissions, and breach of implied warranty of merchantability. Barnow Decl. ¶ 24. On March 1, 2019, NNA moved to dismiss portions of the *Cabebe* SAC. Barnow Decl. ¶ 24. On June 27, 2019, the California court entered an Order staying the *Cabebe* case pending the Settlement approval process in this matter. Barnow Decl. ¶ 24.

*Madrid v. NNA*. On June 8, 2018, Salome Madrid and Teresa Miranda filed a class action complaint in this Court asserting claims under the CLRA, UCL, CSBCWA, MMWA, and for breach of express warranty and unjust enrichment. Barnow Decl. ¶ 25. On August 6, 2018, NNA moved to dismiss the *Madrid* complaint. Barnow Decl. ¶ 25. On May 31, 2019, Terese Miranda joined the *Gann* case as a plaintiff in the Second Amended Complaint. ECF 59. Salome Madrid, the other original plaintiff, voluntarily dismissed her claims on June 6, 2019. Barnow Decl. ¶ 25.

*Costa v. NNA*. On July 20, 2018, Krista Costa filed a class action complaint in the United States District Court for the District of Massachusetts alleging claims under the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Law Chapter 93A, the

MMWA, and for breach of implied warranty. Barnow Decl. ¶ 26. On September 28, 2018, NNA moved to dismiss Costa's complaint. Barnow Decl. ¶ 27. After full briefing and consideration, on January 18, 2019, the Massachusetts court entered an Order denying Nissan's motion. Barnow Decl. ¶¶ 26–27. On February 1, 2019, NNA answered Costa's complaint. Barnow Decl. ¶ 28. On June 19, 2019, the Massachusetts court entered an Order staying the *Costa* case pending the Settlement approval process in this matter. Barnow Decl. ¶ 30.

*Gann v. NNA*. On September 25, 2018, Christopher Gann filed his Class Action Complaint with the Court. Gann's complaint asserted claims under the CLRA, UCL, and MMWA, and for breach of the implied warranty of merchantability and express warranty. Barnow Decl. ¶ 31. On December 14, 2018, Christopher Gann, Leandre Bishop, Autumn Pierce, and Jura Gerald filed their First Amended Class Action Complaint with the Court. Barnow Decl. ¶ 32. The amended complaint alleged claims under MMWA, CLRA, UCL, TDTPA, South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10, *et seq.*, North Carolina Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1, and for breach of express warranty and the implied warranty of merchantability. *Id*. NNA responded by moving to dismiss the amended complaint. Barnow Decl. ¶ 34. On April 1, 2019, the Gann plaintiffs opposed NNA's motion. Barnow Decl. ¶ 34.

On May 31, 2019, a Second Amended Complaint was filed in the *Gann* case asserting claims on behalf of the plaintiffs and causes of action from the *Gann*, *Weinberg*, *Cabebe* and *Costa* actions, as well as Teresa Miranda, an Altima purchaser and former plaintiff in the *Madrid* action as discussed above. Barnow Decl. ¶ 37.[5]

---

[5] Within five days of the Effective Date of the Settlement, plaintiffs in the *Weinberg, Cabebe*, and *Costa* matters will dismiss their cases with prejudice. Settlement Agreement ("SA") ¶ 107.

Co-Lead Class Counsel obtained and reviewed significant discovery produced by NNA, conducted an extensive independent investigation, and consulted with experts to analyze and supplement their investigation and the discovery produced. Barnow Decl. ¶ 44. Co-Lead Class Counsel and other attorneys from their firms spoke to hundreds of Altima owners and lessees about their experiences with Class Vehicles, reviewed and analyzed nearly 23,500 pages of documents produced by NNA (excluding warranty data), examined almost 1 million lines of warranty claim-related information provided by NNA for Class Vehicles, and reviewed hundreds of consumer complaints submitted to the National Highway Traffic Safety Administration and popular consumer complaint websites, dozens of articles from engineering and mechanics publications and blogs, and Nissan's technical service bulletins and service manuals for the Class Vehicles. Barnow Decl. ¶ 44; Blood Decl. ¶¶ 6–9; Godino Decl. ¶¶ 4, 12, 14, 19; Decl. of Mark S. Greenstone ¶¶ 3–4 (Jan. 24, 2020) ("Greenstone Decl."), filed in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Representative Plaintiffs Service Awards. They also interviewed an engineer from NNA's Total Customer Satisfaction department regarding the root causes of CVT repairs, countermeasures implemented in response to such repairs, and the effects such countermeasures had on improving CVT performance. Barnow Decl. ¶ 44.

To supplement the discovery produced and other information collected, Co-Lead Class Counsel consulted with a CVT expert who has published numerous articles regarding Nissan Altima CVTs. Blood Decl. ¶¶ 7, 28; Godino Decl. ¶ 4.

**B. Settlement Negotiations**

After a series of preliminary telephonic discussions and in-person meetings, on April 16, 2019, the Parties participated in a mediation in Atlanta, Georgia, moderated by Hunter Hughes— a highly regarded neutral with decades of class action litigation experience. Barnow Decl. ¶ 35.

7

After more than 8 hours of mediation, the Parties reached an agreement on the material terms of the Settlement, except for attorneys, fees, costs, and expenses. Barnow Decl. ¶ 35. The Parties continued to negotiate for weeks following the mediation and ultimately executed a Memorandum of Understanding on May 3, 2019. Barnow Decl. ¶ 36. Co-Lead Class Counsel and counsel for NNA then spent weeks negotiating the language of the Settlement and related documents—a process involving the exchange of numerous drafts and dozens of conversations and emails regarding the language of the Settlement, notice documents, and other related matters—prior to executing the Settlement on June 6, 2019. Barnow Decl. ¶ 38. The negotiations were intense, adversarial, complex, and resulted in a Settlement providing significant relief to Plaintiffs and the Class.

## C. Preliminary Approval Order

After briefing and due consideration, on July 16, 2019, the Court entered the Preliminary Approval Order. ECF 78. The Court recognized that the Settlement "is the product of arm's length and informed negotiations" assisted by a "well-regarded independent mediator," and found the Settlement to be "within the range of final approval as fair, reasonable, and adequate for the class," taking into consideration the "cost, risks, and delay of trial and appeal, the proposed methods of distribution, attorneys' fees, and [the Settlement's] fair and equitable treatment of all Class Members, relative to each other." *Id.* at 3. The Court analyzed the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), found the requirements to be satisfied for settlement purposes, and preliminarily certified the Settlement Class for settlement purposes only. *Id.* at 2–3. The Court also recognized that "the direct mailing of Summary Notice in the manner set forth in the Notice Program combined with publication of the Long Form Notice, the Settlement Agreement and its other exhibits, and this Order on the Settlement Website is the best notice practicable under the

8

circumstances; constitutes due and sufficient notice of the Settlement and this Order to all persons entitled thereto, and is in full compliance with the requirements of Fed. R. Civ. P. 23(c), applicable law, and due process." *Id.* at 4.

## III.  THE SETTLEMENT

### A.  The Settlement Class

In granting preliminary approval of the Settlement, the Court conditionally certified the following Class for settlement purposes only:

> All current and former owners and lessees of 2013–2016 model year Nissan Altima vehicles equipped with a continuously variable transmission ("CVT") ("Class Vehicles") who purchased or leased Class Vehicles in the United States and its territories including Puerto Rico.

Preliminary Approval Order ¶ 2; SA ¶¶ 39, 50. The following persons and entities are specifically excluded from the Settlement Class: (1) NNA, any entity or division in which NNA has a controlling interest, its/their legal representatives, officers, directors, assigns and successors; (2) any judge to whom this case is assigned and the judge's clerks and any member of the judge's immediate family, and the Sixth Circuit Court of Appeals; and (3) government purchasers and lessees. *Id.*

### B.  Settlement Benefits

The Settlement includes the following benefit provisions:

#### 1.  Extended Warranty Coverage

The Settlement extends powertrain coverage for transmission repairs under Class Vehicles' New Vehicle Limited Warranty by 40 percent, from 60 months or 60,000 miles to 84 months or 84,000 miles, whichever occurs first. SA ¶¶ 56–57. To take advantage of the Warranty Extension, Class Vehicle owners and lessees need only bring their vehicle requiring a transmission repair to an authorized Nissan dealer during the vehicle's Warranty Extension Period.

9

The Warranty Extension is a significant benefit to the Class. The average cost to replace a Class Vehicle's CVT is in the range of $3,500. Blood Decl. ¶ 34. As demonstrated by the robust market for extended warranties, vehicle owners value the protection and peace-of-mind that comes with an extended warranty. NNA's commitments under this provision are not capped, ensuring that all Class Members can take advantage of this valuable benefit during their Class Vehicles' Warranty Extension Period. Banow Decl. ¶ 49.

## 2. Reimbursement for Qualifying Transmission Repairs

The Settlement enables Class Members to recover amounts they paid for parts and labor to repair or replace their Class Vehicle's transmission during the vehicle's Warranty Extension Period. SA ¶ 58. Under the Settlement, NNA will reimburse Class Members (i) 100% of the amount they actually paid to an authorized Nissan dealer to repair or replace their Class Vehicle's transmission during the vehicle's Warranty Extension Period, or (ii) up to $5,000 of the amount they actually paid to a non-NNA automotive repair facility to repair or replace their Class Vehicle's transmission during the vehicle's Warranty Extension Period. SA ¶ 58. This provision effectively makes the warranty extension retroactive and is of significant value to the Class.

The Settlement also reimburses Class Members 100% of the amounts they paid for parts and labor to authorized Nissan dealers (or up to $5,000 paid to non-NNA automotive repair facilities) to repair transmissions diagnosed by an authorized Nissan dealer as needing a transmission repair during the Warranty Extension Period, but which were not repaired until after the Warranty Extension Period, so long as the Class Member obtains the recommended transmission repair prior to the vehicle exceeding 90,000 or January 30, 2020, whichever occurs first. SA ¶ 59. This provision provides valuable coverage for Class Members whose Class Vehicle was diagnosed as needing a transmission repair during the Warranty Extension Period, but could

10

not afford to pay for the recommended repair until after the vehicle was outside of the Warranty Extension Period.

To obtain reimbursement, Class Members need only submit a Claim Form and documentation sufficient to show a Qualifying Repair. SA ¶¶ 14, 80. The Claim Form is available to view and download on the Settlement Website and can be submitted on-line or by U.S. mail. SA ¶ 82. Class Members have until the later of January 30, 2020, or thirty (30) days after a Qualifying Repair to submit a Claim Form. SA ¶ 7.[6] As of January 23, 2020, KCC reported having received 7,949 claims for reimbursement.

### 3. Vouchers for Certain Former Owners

The Settlement provides that Class Members who meet the following criteria will be eligible to receive a $1,000 Voucher usable towards the purchase or lease of a new Nissan or Infiniti vehicle: (1) the Class Member was a former owner of a Class Vehicle as of November 1, 2019; and (2) NNA's warranty records reflect that during the time the Class Member owned the Class Vehicle the vehicle had two or more transmission repairs (other than software updates and/or reprogramming) or replacements. SA ¶¶ 4, 13, 43, 61. All Vouchers received under the Settlement must be used at an authorized Nissan or Infiniti dealer within nine (9) months of the Settlement's Effective Date. SA ¶ 43. Class Members who are eligible for both reimbursement of a Qualifying Repair and a Voucher on the same vehicle must select either the Voucher or reimbursement, but may not receive both benefits. SA ¶ 64.

---

[6] For Class Members whose Summary Notice was returned as undeliverable and then re-mailed to a forwarding or new address, the Settlement Administrator will accept and consider Claim Forms received within ninety (90) days after the date of remailing of the Summary Notice. SA ¶ 7.

### 4. Expedited Resolution Process for Future Transmission Claims

The Settlement includes an expedited resolution process to resolve Class Member claims for breach of the Nissan New Vehicle Limited Warranty, as extended by the Warranty Extension, related to transmission design, manufacturing, or performance based solely on events occurring after November 1, 2019 ("Future Transmission Claims"). SA ¶ 106. Class Members are required to submit Future Transmission Claims through the BBB AUTO LINE dispute resolution program, which is independently operated by the Council for Better Business Bureaus, Inc ("BBB"). SA ¶ 106 and Exhibit A. The Expedited Resolution Process is binding on the Class Member only in instances where the BBB decides that NNA must repurchase the vehicle or where NNA offers to repurchase the vehicle. SA Exhibit A. In all other situations, the Class Member may accept the BBB's decision, appeal it, or file a lawsuit. *Id.* Any decision by BBB Auto Line will be binding on NNA. SA Exhibit A. The costs of the Expedited Resolution Process will be borne by NNA. *Id.*

### 5. The Costs of Notice and Settlement Administration

Under the Settlement, NNA is responsible for paying all costs of Notice and Settlement administration. SA ¶ 66. KCC reports notice and settlement administration costs of $1,101,398 to date. Decl. of Lana Lucchesi Re: Notice Procedures ("Lucchesi Decl.") ¶ 19.

### 6. Attorneys' Fees, Costs, and Expenses, and Representative Plaintiff Service Awards

Pursuant to the Settlement, NNA agreed not to oppose Co-Lead Class Counsels' request for attorneys' fees, costs, and expenses not to exceed $5,900,000, subject to Court approval. SA ¶ 116. NNA also agreed not to oppose Plaintiffs' application for payment of a service award in the amount of $5,000 to each of Class Representatives, subject to Court approval. The Parties did not discuss attorneys' fees, costs, and expenses, or service awards until after reaching agreement on all material terms of the Settlement. Barnow Decl. ¶ 36. Amounts awarded by the Court for

attorneys' fees, costs, and expenses, and Plaintiff service awards will be paid by NNA separate and apart from the relief going to the Class. SA ¶ 117.

Pursuant to Fed. R. Civ. P. 23(h), Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives will be filed on January 24, 2020.

### C. The Court-Approved Notice Program Was Highly Effective

Where a Class has been certified under Fed. R. Civ. P. 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). "Due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice." *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008).

The Court-approved Notice Program was extremely effective. The Notice Plan was implemented by KCC, an experienced class action notice provider. As explained in detail in the Lucchesi Declaration, attached hereto as Exhibit B, Notice was provided in accordance with the Court-approved Notice Program. Pursuant to the Notice Program, direct notice was sent via Summary Postcard Notice, a Settlement website was established, and a toll-free number was set up. It is estimated that Summary Postcard Notice successfully reached more than 94 percent of all Class Members. Such notice readily satisfies the "best practicable" standard. *See also* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010) (recognizing 70% reach to be reasonable).

KCC caused 2,660,849 Summary Postcard Notices to be mailed to Class Members via U.S. Mail. Lucchesi Decl. ¶ 11. Prior to mailing the Summary Postcard Notices, KCC obtained current addresses from the databases of the various State departments of motor vehicles, removed records with invalid addresses and duplicate records and updated the remaining records using the National Change of Address database maintained by the United States Postal Service. Lucchesi Decl. ¶¶ 7–10. For 164,138 Summary Postcard Notices returned as undeliverable by the USPS, KCC ran address searches and re-mailed Summary Postcard Notices to 26,756 individuals for whom an alternative address was found. Lucchesi Decl. ¶ 13. As a result, more than 94 percent of Class Members were successfully mailed Summary Postcard Notice of the Settlement.[7]

An informational website was established with an easy-to-remember domain name, www.altimacvtsettlement.com, that was prominently displayed in the Summary Postcard Notice, Claim Form, and Long-Form Notice. Lucchesi Decl. ¶ 14. The informational website includes a short summary of the Settlement, important dates relating to the Settlement (claims deadline, opt-out/objection deadline, final approval hearing date), answers to frequently asked questions, and contact information for the Settlement Administrator. Lucchesi Decl. ¶ 14. Through the informational website, Class Members are able to submit a Claim Form electronically, view and download a Claim Form, and to view the Settlement Agreement, Long-Form Notice, and Preliminary Approval Order. Lucchesi Decl. ¶ 14. Plaintiffs' Motion for Final Approval and supporting Memorandum of Law, Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives, and Plaintiffs' Response Brief in Support of Motion for Final Approval of the Settlement will also be uploaded

---

[7] Summary Postcard Notice was successfully mailed to 2,523,467 Class Members (2,660,849 – 164,138 + 26,756 = 2,523,467). Dividing the number of Summary Postcard Notices successfully mailed by the estimated number of total Class Members (2,523,467/2,670,879) equals .944.

to the Settlement website after being filed with the Court. As of January 23, 2020, the Settlement website has received 119,288 visits. Lucchesi Decl. ¶ 14.

On October 30, 2019, the Settlement toll-free number was established. Lucchesi Decl. ¶ 15. By calling the toll-free number, persons interested in the Settlement can listen to information about the case, information about the Settlement, and get answers to frequently asked questions. Lucchesi Decl. ¶ 15. As of January 23, 2020, there have been 38,763 calls to the toll-free number. Lucchesi Decl. ¶ 15.

The Notice Program, as designed and implemented, constitutes the best notice practicable under the circumstances, complies with Fed. R. Civ. P. 23, and satisfies due process requirements.

## IV.  ARGUMENT

Class action settlements may be approved only after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). As a matter of public policy, federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* § 13:44 (5th ed. 2015); *see also UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.").

Fed. R. Civ. P. 23(e)(2) provides that in determining whether a settlement is fair, reasonable, and adequate, a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Consideration of these factors demonstrates the Settlement is fair, reasonable, and adequate, and should be granted final approval.

## A. The Class Should be Certified for Settlement Purposes Only

The Court's Preliminary Approval Order analyzed the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), found the requirements satisfied, and certified the Class for settlement purposes only. Nothing has changed that would affect the Court's ruling on certification of the Settlement Class. For the reasons stated in the Preliminary Approval Order, the Court's certification of the Settlement Class for settlement purposes only should be affirmed. *See Chambers v. Whirlpool Corp.*, No. CV11-1733, 2016 WL 5922456, at *5 (C.D. Cal. Oct. 11, 2016) (affirming order certifying class for settlement purposes only) (citations omitted).

## B. The Settlement Is Fair, Reasonable, and Adequate

### 1. The Settlement Was Negotiated at Arm's Length by Experienced Class Action Attorneys Who Adequately Represented the Class

Rule 23(e)(2)(A) and (B) require consideration of whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Courts considering these factors look to class counsels' actual performance on behalf of the class, including whether class counsel possessed adequate information when negotiating the Settlement and whether a neutral or court-affiliated mediator was involved in the settlement negotiation process. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendments.

Co-Lead Class Counsel have significant experience prosecuting complex class actions, including complex automotive class actions, and are well versed in applicable law. *See* Barnow Resume, ECF 66-3; Blood Resume, ECF 66-2; Godino Resume, ECF 67-1; Greenstone Resume, ECF 67-2. Their firms collectively interviewed hundreds of Class Vehicle owners and lessees regarding their experiences, read and analyzed almost 23,500 pages of documents produced by NNA (excluding warranty data), examined nearly 1 million lines of warranty claim-related information for Class Vehicles, and reviewed hundreds of consumer complaints submitted to the National Highway Traffic Safety Administration and popular consumer complaint websites, dozens of articles from engineering and mechanics publications and blogs, and Nissan's technical service bulletins and maintenance manuals covering Class Vehicles. Barnow Decl. ¶ 44; Blood Decl. ¶¶ 6–9; Godino Decl. ¶¶ 4, 12, 14, 19; Greenstone Decl. ¶¶ 3–4. They also interviewed an NNA engineer regarding the root causes of reported CVT repairs and countermeasures implemented in connection with such repairs, and consulted with an expert with specific expertise regarding Class Vehicles' CVTs. Barnow Decl. ¶ 44.

Plaintiffs have also worked diligently on behalf of the Class. They stepped forward to prosecute this action on behalf of all Class Members, were involved in the drafting of the complaints, and reviewed and approved the Settlement.

The Settlement is the product of hard-fought and arm's length negotiations conducted by experienced counsel. On April 16, 2019, the Parties engaged in a full-day mediation with the assistance of Hunter Hughes, a highly respected class action mediator. *See Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *1 (S.D. Tex. Jan. 30, 2019) (recognizing Mr. Hughes as a "a nationally-respected and experienced class action neutral"). Negotiations continued during the ensuing weeks, leading to the Parties' execution of a Memorandum of Understanding

on May 3, 2019. Barnow Decl. ¶ 36. The Parties then spent weeks negotiating the language of the Settlement and related documents—a process involving the exchange of numerous drafts and dozens of conversations and emails regarding the language of the Settlement, notice documents, and other related matters—prior to executing the Settlement. Barnow Decl. ¶ 38.

The end result is a Settlement that provides significant and timely benefits to Class Members. This factor supports final approval. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) ("parties' two-and-a-half years of litigation, extensive discovery, ongoing settlement negotiations, and formal mediation session all weighed against the possibility of fraud or collusion"); *Applegate-Walton v. Olan Mills, Inc.*, No. 3:10-cv-00224, 2010 U.S. Dist. LEXIS 77965, at *5 (M.D. Tenn. Aug. 2, 2010) (finding no risk of fraud or collusion where the settlement was "the result of intensive, arms-length negotiations, including mediation with an experienced third-party neutral").

### 2. The Settlement Benefits Are Excellent Considering the Risks, Costs, and Likely Duration of Continued Litigation

Balancing the risks of continued litigation, against the immediacy and certainty of the significant recovery provided for by the Settlement, supports the Settlement should be approved.

Plaintiffs and Co-Lead Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But they also recognize the substantial risks involved in continuing this litigation. Barnow Decl. ¶ 51. NNA has aggressively defended its position regarding certification of a litigated class and liability. It denies both. Barnow Decl. ¶ 51. Co-Lead Class Counsel are mindful of the inherent burdens of proof and possible defenses asserted in the litigation and recognize the difficulties in establishing liability on a class-wide basis through summary judgment and at trial. Barnow Decl. ¶ 51. They

also acknowledge that NNA has the resources to remain steadfast in its position until it exhausts all available avenues and procedures. Barnow Decl. ¶ 51.

Prosecuting this litigation through trial and appeal would likely be lengthy, complex, and impose significant costs on all parties. *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, No. 08-MD-1000, 2013 WL 2155379, at *4 (E.D. Tenn. May 17, 2013) ("In general, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.") (citations and internal quotations omitted). Litigating this complex matter to final judgment would almost certainly require substantial motion practice, extensive fact discovery, class certification proceedings, further dispositive motions, a trial including a costly battle of experts and given the size of the Class and amount of money at stake, a lengthy appeal process. Barnow Decl. ¶ 51. Expert reports and testimony would be necessary to establish the defect, show that it is common to the Class Vehicles, and prove that it causes transmission failure which is unrelated to and separate from normal transmission wear and tear. Barnow Decl. ¶ 51.

The Settlement, in contrast, delivers substantial and immediate benefits to Class Members without the risks and delay inherent in further litigation. The Settlement provides for a 40% increase in Class Vehicles' powertrain warranty for transmission repairs, reimburses Class Members 100% of amounts they actually paid for parts and labor to authorized Nissan dealers (or up to $5,000 paid to non-NNA automotive repair facilities) for transmission repairs (i) during the Warranty Extension Period, (ii) or prior to January 30, 2020, or the vehicle reaching 90,000 miles, whichever occurred first, if an authorized Nissan dealer diagnosed and recommended repair of the vehicle's transmission during the Warranty Extension Period. SA ¶¶ 56–59. If a Class Member paid for repairs on multiple occasions, they are entitled to reimbursement for all such repairs subject to the above conditions. As detailed above, Plaintiffs' expert estimates the retail value to

the Class of the Extended Warranty and reimbursement coverage to be $444,471,000. *See* Declaration of Lee M. Bowron filed in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives.

The Settlement also entitles former Class Vehicle owners who experienced two or more transmission repairs while they owned the vehicle (other than software updates and/or reprogramming) and, if eligible, elected not to submit a claim for reimbursement, to a $1,000 Voucher usable towards the purchase or lease of a new Nissan or Infiniti vehicle at an authorized Nissan or Infiniti dealer within nine (9) months of the Effective Date of the Settlement. SA ¶ 61. The Voucher may be used in combination with other discounts, rebates, and the like. SA ¶ 61.

This factor supports final approval of the Settlement. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush"); *see also Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *In re Sunrise Sec. Litig.,* 131 F.R.D. 450, 455 (E.D. Pa. 1990) (approving a class action settlement because, in part, the settlement "will alleviate … the extraordinary complexity, expense and likely duration of this litigation").

### 3. The Method of Distributing Relief Supports Final Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Courts considering this factor look to whether the method of claims processing facilitates the filing of

legitimate claims while deterring unjustified claims, and whether the claims process is unduly demanding. Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendments.

The Settlement was designed to maximize Class Member recovery. Class Members were identified by each Class Vehicle's unique Vehicle Identification Number ("VIN"), screening out unjustified claims. Relief is also readily accessible to Class Members. All Class Members are eligible for the Warranty Extension provided by the Settlement. SA ¶¶ 56–57. If their Class Vehicle's transmission requires repair or replacement during the Warranty Extension Period, Class Members need only bring the vehicle to an authorized Nissan dealer to take advantage of that significant benefit. SA ¶¶ 56–57.

The claims process provided for under the Settlement was designed to facilitate the filing of valid reimbursement claims by Class Members. Claim Forms can be submitted online or by mail at a Class Member's convenience. SA ¶ 82. All Claim Forms submitted will be processed by KCC, an experienced and nationally recognized class action administration firm. This factor supports final approval of the Settlement.

### 4. The Terms of the Proposed Award of Attorneys' Fees Support Final Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment."

The terms of the proposed attorneys' fee award under the Settlement are consistent with class action best practices. The Parties did not discuss attorneys' fees until after agreeing upon all material terms of the Settlement. SA ¶ 115; Barnow Decl. ¶ 36. The attorneys' fees are to be paid by NNA separate and apart from the benefits provided to the Class under the Settlement and will not diminish the Class's recovery. SA ¶ 117. NNA has until twenty-eight (28) days after the

Effective Date of the Settlement to cause the attorneys' fees to be paid to Co-Lead Class Counsel—there is no quick pay provided for by the Settlement. SA ¶ 117.

Pursuant to Fed. R. Civ. P. 23(h), Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Services Awards for Class Representatives Expenses will be filed on January 24, 2020.

### 5. The Settlement Treats All Class Members Equitably

Fed. R. Civ. P. 23(e)(2)(D) requires courts to consider whether a settlement "treats class members equitably relative to each other."

Under the Settlement, all Class Members are eligible for the Warranty Extension and all Class Members who qualify for reimbursement or a Voucher can claim such benefits. SA ¶¶ 56-61. The release provided for by the Settlement also applies equally to all Class Members. SA ¶¶ 103–105. As the foregoing analysis demonstrates, the Settlement is fair, reasonable, and adequate and should be granted final approval.

## V. CONCLUSION

As the foregoing demonstrates, the Settlement is fair, reasonable, and adequate, and satisfies the standard for final approval. Therefore, Plaintiffs, individually and on behalf of the Class, by and through Co-Lead Class Counsel, respectfully pray that this Honorable Court enter an Order:

(1) Finding that the Settlement is fair, reasonable, and adequate, and granting final approval to the Settlement;

(2) Certifying the Class for settlement purposes only; and

(3) Granting such other relief as the Court deems just and appropriate.

Dated: January 24, 2020

Respectfully submitted,

/s/ Ben Barnow

Ben Barnow (admitted *pro hac vice*)
Erich P. Schork (admitted *pro hac vice*)
Anthony L. Parkhill (admitted *pro hac vice*)
BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
aparkhill@barnowlaw.com

Timothy G. Blood (admitted *pro hac vice*)
Leslie E. Hurst
Thomas O'Reardon (admitted *pro hac vice*)
BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: (619) 338-1100
Fax: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

Marc L. Godino (admitted *pro hac vice*)
Danielle L. Manning (admitted *pro hac vice*)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
mgodino@glancylaw.com
dmanning@glancylawcom

Mark S. Greenstone (admitted *pro hac vice*)
GREENSTONE LAW APC
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
mgreenstone@greenstonelaw.com

*Co-Lead Class Counsel*

Kevin H. Sharp
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, TN 37203
Tel: 615/434-7000
615/434-7020 (fax)
ksharp@sanfordheisler.com

*Class Counsel*

David Pastor
PASTOR LAW OFFICE
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
(617) 742-9700 (p)
(617) 742-9701 (f)
dpastor@pastorlawoffice.com

Raul Perez
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
Tel: (310) 556-4881
Fax: (310) 943-0396
Raul.Perez@CapstoneLawyers.com

Gary E. Mason
WHITFIELD BRYSON & MASON LLP
5101 Wisconsin Ave. NW, Ste. 305
Washington, D.C. 20016
Tel: (202) 429-2290
gmason@wbmllp.com

24

Lawrence Deutsch
BERGER MONTAGUE
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ldeutsch@bm.net

*Other Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2020, a copy of the foregoing was filed electronically with the Clerk of the court for the United States District Court for the Middle District of Tennessee using the CM/ECF filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John S. Hicks (BPR No. 010478)
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: 615-726-5600
Fax: 615-744-7337
jhicks@bakerdonelson.com

E Paul Cauley, Jr. (admitted *pro hac vice)*
S. Vance Wittie (*admitted pro hac vice*)
Drinker, Biddle & Reath, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone: 469-227-8200
Fax: 469-227-8004
paul.cauley@dbr.com
vance.wittie@dbr.com

s/ Ben Barnow
Ben Barnow