UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE - NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER GANN, LEANDRE BISHOP, KEVIN BURKE, ELISA CABEBE, ISRAEL CHIA, KRISTA COSTA, HILLARY DICK, JURA GERALD, SEIJI SILER-HYATTE, JEANINE INGRASSIA, ARNIKA IRELAND, MONTELL JONES, MICHAEL KANZLER, ALEXANDRA MCCULLOUGH, TERESE MIRANDA, AUTUMN PIERCE, ROBERT H. WEINBERG, LASHANDRIKA WILLIAMS, AND LAURA WINDOM, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>      Defendant. | Case No. 3:18-cv-00966<br><br>**CLASS ACTION**<br><br>**DECLARATION OF BEN BARNOW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>District Judge Eli Richardson<br>Courtroom 874<br>Magistrate Judge Alistair E. Newbern<br>Courtroom 774<br><br>**JURY TRIAL DEMANDED** |

I, BEN BARNOW, declare as follows:

1. I am an attorney duly licensed to practice law in the State of Illinois and the State of New York. I am the President of Barnow and Associates, P.C.

2. I am one of Court-appointed Co-Lead Class Counsel. I am also one of counsel for Plaintiffs in the related actions, *Weinberg v. Nissan North America, Inc*. No. 17-cv-08867 (N.D. Ill.), and *Costa v. Nissan North America, Inc*. No. 18-cv-11523 (D. Mass.).

3. I have been practicing law for over 48 years. During the last twenty-five plus years, I have successfully prosecuted some of the nation's largest class action lawsuits.

4. I submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement. I have personal knowledge of the matters stated herein and, if called upon, could and would competently testify to them.

I. **HISTORY OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS**[1]

5. The Settlement Agreement covers and resolves four separate class actions:

   a. *Robert Weinberg v. Nissan North America, Inc.*,
      No. 17-cv-08867 (N.D. Ill.) ("*Weinberg*");

   b. *Elisa Cabebe, et al. v. Nissan North America, Inc.*,
      No. 18-cv-00144 (N.D. Cal.) ("*Cabebe*");

   c. *Krista Costa v. Nissan North America, Inc.*,
      No. 18-cv-11523 (D. Mass.) ("*Costa*"); and

   d. *Christopher Gann, et al. v. Nissan North America, Inc.*,
      No. 18-00966 (M.D. Tenn.) ("*Gann*").

6. This litigation concerns the performance of the continually variable transmissions ("CVTs") in model year 2013–2016 Nissan Altima vehicles (the "Class Vehicles"). Nissan promoted the CVT as a major selling point and its marketing and advertisements emphasized the CVT's smoothness, fluid-feeling performance, improved drivability, and responsiveness. On

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as set forth in the Settlement Agreement.

behalf of themselves and other Class Members, Plaintiffs allege that, contrary to such representations, Class Vehicles' CVTs were defective, causing the vehicles to shudder, hesitate, stall, make unusual noises, and ultimately result in premature transmission failure.

7. In early Fall 2017, my firm and attorneys from Blood Hurst & O'Reardon, LLP ("BHO") conducted a significant pre-filing investing upon learning of a significant number of complaints regarding the performance of Class Vehicles' CVTs. As part of that initial investigation, attorneys from my firm and BHO reviewed hundreds of relevant complaints filed with the National Highway Traffic Safety Administration ("NHTSA") and posted on popular consumer complaint websites, such as CarComplaints.com, analyzed NNA's marketing materials and advertisements for Class Vehicles, reviewed NNA's New Vehicle Limited Warranty for Class Vehicles, researched Nissan's statements regarding quality issues with JATCO's CVTs, and researched Nissan's responses to complaints regarding CVT performance on other Nissan model vehicles.

8. On December 8, 2017, on behalf of plaintiff Robert H. Weinberg ("*Weinberg*") and a proposed nationwide class of owners and lessees of model year 2013 and 2014 Altima vehicles, my firm and attorneys from BHO filed a Class Action Complaint in the United States District Court for the Northern District of Illinois. In that Complaint, Mr. Weinberg alleged violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, the Illinois Consumer Fraud Act, 15 Ill. Comp. Stat. 505/2 ("ICFA"), and breach of warranty. To my knowledge, the *Weinberg* complaint was the first class action complaint filed asserting claims against NNA relating to Class Vehicle's allegedly defective CVTs.

9. The *Weinberg* case was initially assigned to the Honorable Amy J. St. Eve who now sits on the United States Court of Appeals for the Seventh Circuit. When the case was filed,

2

Judge St. Eve was participating in the Northern District of Illinois' Mandatory Initial Discovery Pilot program ("MIDP"), the requirements of which were mandatory and superseded the disclosures required by Fed. R. Civ. P. 26(a)(1). The *Weinberg* case was assigned to participate in the MIDP.

10. On February 20, 2018, Nissan moved to dismiss Weinberg's complaint and, separately, to strike the class action allegations in the complaint. On the same day and pursuant to the MIDP's requirements, NNA also filed an Answer to Weinberg's complaint.

11. On February 21, 2018, Weinberg and NNA jointly filed a Case Management Report Pursuant to Fed. R. Civ. P. 23(f). On February 26, 2018, Judge St. Eve held an initial case management conference at which she set a briefing schedule for NNA's motion to dismiss and motion to strike class allegations and a schedule for the parties' submission of an agreed confidentiality order, submission of an ESI order, exchange of mandatory initial discovery responses under the MIDP, and for the production of hard copy documents and ESI identified in the parties MIDP responses.

12. After several emails, telephone conversations, and exchanging drafts of each document, the parties submitted a proposed agreed confidentiality order and a proposed agreed document production protocol order to Judge St. Eve who entered the orders on March 22, 2018, and April 3, 2018, respectively.

13. On March 22, 2018, the parties exchanged MIDP-mandated initial discovery responses. Pursuant to the MIDP's requirements, the parties were obligated to provide, inter alia: (1) the "names and, if known, the addresses and telephone numbers of all persons [they] believe are likely to have discoverable information relevant to any party's claims or defenses, and [to] provide a fair description of the nature of the information each such person is believed to possess;"

(2) provide a list of documents and ESI believed to be relevant to any party's claims or defenses; and (3) identity facts relevant to and the legal theories upon which each of their claims or defenses is based. *See* Mandatory Initial Discovery Pilot Project Standing Order, available at https://www.ilnd.uscourts.gov/_assets/_documents/MIDP%20Standing%20Order.pdf.

14. On March 26, 2018, my firm and BHO filed Weinberg's opposition to NNA's motion to strike the class allegations in his complaint, as well as his opposition to NNA's motion to dismiss the complaint. NNA's reply briefs in support of its motion to dismiss and motion to strike class allegations were filed on April 16, 2018. As a result of Judge St. Eve's elevation to the Seventh Circuit Court of Appeals, the *Weinberg* cases was reassigned to the Honorable Joan B. Gottschall on May 23, 2018.

15. On June 1, 2018, NNA served its initial production of ESI on Weinberg's counsel via email. On July 13, 2018, my firm caused Plaintiff's First Set of Requests for Production of Documents to be served on NNA's counsel. NNA's second batch of ESI was produced on August 28, 2018, and its responses and objections to Plaintiff's First Set of Requests for Production of Documents were served on October 8, 2018. During the following months, the parties exchanged multiple emails and letters regarding NNA's responses and objections and outstanding discovery. NNA ultimately produced nearly 23,500 pages of documents in connection with discovery in the *Weinberg* case, all of which were reviewed by attorneys from my firm and BHO.

16. On December 14, 2018, I attended a meeting with NNA's attorneys to preliminarily discuss the possibility of a global resolution of the *Weinberg* case and other related Altima CVT cases.

17. On September 28, 2018, Judge Gottschall entered an order granting in part and denying in part NNA's motion to dismiss Weinberg's Class Action Complaint. The Order rejected

NNA's request to dismiss Weinberg's breach of express warranty claim, but dismissed Weinberg's breach of implied warranty and the Illinois Consumer Fraud Act claims ("ICFA") without prejudice. The next day, Judge Gottschall entered an order denying NNA's motion to strike Weinberg's class allegations.

18. On October 19, 2018, my firm and BHO filed a motion for leave to file an amended class action complaint in the *Weinberg* case alleging additional facts in support of his ICFA and implied warranty claims and adding model year 2015 Altima vehicle owners and lessees to the proposed class definition. The motion was granted and Weinberg's amended class complaint was filed on October 25, 2018.

19. On December 17, 2018, NNA moved to dismiss Weinberg's amended class action complaint. Weinberg opposed NNA's motion to dismiss on January 16, 2019, and NNA's reply brief in support of its motion to dismiss was filed on February 11, 2019.

20. On June 18, 2019, Weinberg and NNA jointly moved to stay the *Weinberg* case pending the settlement approval process in this matter. The next day, June 19, 2019, Judge Gottschall entered an Order staying the *Weinberg* case and denying NNA's motion to dismiss Weinberg's amended complaint without prejudice and with leave to reinstate in the event the Settlement is not approved.

21. On January 8, 2018, my Co-Lead Class Counsel, Mark Greenstone and Marc Godino, filed a related class action complaint against NNA in United States District Court for the Northern District of California on behalf of Elisa Cabebe and proposed nationwide and California classes of Altima purchasers and lessees alleging violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; breach of implied warranty pursuant to

5

California Song-Beverly Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code §§ 1792, 1791.1, *et seq.* and Cal. Com. Code § 2314; breach of express warranty, Cal. Com. Code § 2313; violation of the MMWA; and common law fraudulent omission. On March 7, 2018, NNA moved to dismiss Cabebe's class action complaint.

22. Pursuant to the parties' stipulation, on April 19, 2018, Messrs. Greenstone and Godino filed an amended class action complaint on behalf of Elisa Cabebe, Hillary Dick, Israel Chia, and Alexandra McCullough and proposed California, New York, and Pennsylvania classes. The *Cabebe* amended complaint alleged violations of the CLRA, UCL, MMWA, New York Gen. Bus. Law for Deceptive Acts or Practices §§ 349–350, Pennsylvania Unfair Trade Practices and Consumer Protection Law, 43 P.A. Cons. Stat. § 2314, breach of express warranty, breach of implied warranty of merchantability, and fraudulent omission. On May 9, 2018, Nissan filed a partial motion to dismiss the *Cabebe* amended complaint.

23. After full briefing, on October 26, 2018, the California court entered an order granting in part and denying in part Nissan's motion to dismiss. The California court's order dismissed the New York consumer protection statute (N.Y. Gen. Bus. Law § 349) claim and the New York fraudulent omission claim, but denied NNA's motion with respect to all other claims.

24. On December 19, 2018, Messrs. Greenstone and Godino filed a corrected second amended class action complaint in the *Cabebe* case on behalf of Elisa Cabebe, Hillary Dick, Israel Chia, Alexandra McCullough, Montell Jones, Kevin Burke, Arnika Ireland, Jeanine Ingrassia, Seiji Siler-Hyatte, Lashandrika Williams, Laura Windom, and Michael Kanzler and proposed Alabama, Arizona, California, Florida, Illinois, New Jersey, New York, Pennsylvania, and Texas classes alleging violations of the Alabama Deceptive Trade Practices Act (Ala. Code § 8-19, *et seq.*), Arizona's Consumer Fraud Act (Ariz. Rev. Stat. § 44-1521, *et seq.*), CLRA, UCL, Illinois

6

Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*), Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*), New Jersey's Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*, New York General Business Law for Deceptive Acts or Practices § 349, Pennsylvania Unfair Trade Practices and Consumer Protection Law (P.S. § 201-1, *et seq.*), MMWA, breach of express warranty, breach of implied warranty of merchantability, and fraudulent omissions. On March 1, 2019, NNA moved to dismiss the *Cabebe* second amended complaint. On June 27, 2019, the California court entered an Order staying the *Cabebe* case pending the Settlement approval process in this matter.

25. On June 8, 2018, Salome Madrid and Teresa Miranda filed a class action complaint in the United States District Court for the Middle District of Tennessee, captioned *Madrid v. Nissan North America, et al.*, No. 18-cv-00534 (M.D. Tenn.), asserting claims under the CLRA, UCL, MMWA, Song-Beverly Act, and for breach of express warranty and unjust enrichment. On August 6, 2018, Nissan moved to dismiss Madrid's class action complaint, which was fully briefed. Thereafter, Salome Madrid dismissed her claims voluntarily and Teresa Miranda joined the *Gann* action as a named plaintiff. An amended complaint has since been filed in the *Madrid* case on behalf of owners and lessees of certain Nissan Juke vehicles and which is the subject of a separate settlement agreement with NNA.

26. On July 20, 2018, my firm, BHO, and Pastor Law Office filed a class action complaint on behalf of Krista Costa ("Costa") and a proposed class of "all persons who purchased or leased a 2013 or 2014 Nissan Altima for end use and not for resale in the Commonwealth of Massachusetts." Ms. Costa alleged claims for violations of the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws. ch. 93A, *et seq.*; the MMWA; and breach of implied warranty. The case was assigned to the Honorable Leo T. Sorokin.

7

27. On September 28, 2018, NNA moved to dismiss Costa's class action complaint. Along with co-counsel from BHO and Pastor Law Office, my firm prepared and filed an opposition to NNA's motion to dismiss on October 12, 2018. On December 22, 2018, NNA filed a reply brief in support of its motion.

28. On January 18, 2019, Judge Sorokin entered a 6-page order denying NNA's motion to dismiss. NNA's answer to Costa's class action complaint was filed on February 1, 2019.

29. After a series of calls and emails, amongst attorneys from my firm, co-counsel, and NNA's attorneys, on March 18, 2019, the parties submitted a Joint Local Rule 16.1 Statement (including a proposed scheduling order). At the March 28, 2019 scheduling conference, Judge Sorokin set a schedule for the parties' exchange of initial disclosures and a briefing schedule for class certification and expert disclosures relating thereto.

30. On June 18, 2019, Costa and NNA jointly moved to stay the *Costa* case pending the settlement approval process in this matter. The next day, June 19, 2019, Judge Sorokin entered an order granting the parties' joint motion to stay and directing the parties to provide a status report every 90 days. Pursuant to Judge Sorokin's directive, my firm and attorneys from BHO and Pastor Law Office worked with NNA to prepare and file joint status reports in the *Costa* case on September 16, 2019, and December 26, 2019.

31. On September 25, 2018, my firm, BHO, and Sanford Heisler Sharp LLP filed a class action complaint against NNA in this Court on behalf of Christopher Gann and a proposed nationwide class of "all persons and entities that purchased or leased a 2013 or 2014 Nissan Altima for end use and not for resale." In that complaint, Gann alleged California state law claims for breach of implied and express warranties and violations of the MMWA, CLRA and UCL.

32. Prior to NNA answering or moving to dismiss that complaint, on December 14, 2018, my firm, along with co-counsel from BHO and Sanford Heisler Sharp LLP, filed an amended class action complaint in the *Gann* case on behalf of Christopher Gann, Leandre Bishop, Autumn Pierce, Jura Gerald, and a proposed nationwide class of all persons and entities that purchased or leased a model year 2013–2015 Nissan Altima vehicle for end use and not for resale. The *Gann* amended class action complaint alleged claims against NNA for breach of express and implied warranty and for violation of the MMWA, CLRA, UCL, Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*, South Carolina Consumer Protection Act, S.C. Code § 39-5-10, *et seq.*, and the North Carolina Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. § 75.1, *et seq.*

33. After a number of calls and emails between attorneys from my firm, co-counsel from BHO and Sanford Heisler Sharp, and counsel for NNA, the *Gann* plaintiffs and NNA jointly filed a Proposed Initial Case Management Order on February 22, 2019. On March 20, 2019, I participated in an initial case management conference with Magistrate Judge Barbara D. Holmes along with co-counsel Jonathan Tepe from Sanford Heisler Sharp LLP, and NNA's attorneys Paul Cauley and John Hicks.

34. On February 25, 2019, NNA moved to dismiss the *Gann* amended class action complaint. My firm, along with co-counsel from BHO and Sanford Heisler Sharp LLP, prepared an opposition to NNA's motion to dismiss, which was filed with the Court on April 1, 2019.

35. On April 16, 2019, I attended a mediation session in Atlanta, Georgia, moderated by Hunter Hughes, a highly-respected mediator. The negotiation was complex, intense and, at times, highly contested. After more than 8 hours of mediation, the parties finally reached a

preliminary agreement on the material terms of the Settlement, except for attorneys' fees, expenses, and service awards, which were not agreed upon until a later time.

36. Negotiations continued in the weeks following the mediation with the assistance of Hunter Hughes. On May 3, 2019, the parties' executed a Memorandum of Understanding. The parties did not discuss attorneys' fees, costs, and expenses, or service awards until after reaching agreement on all material terms of the Settlement.

37. On May 31, 2019, Plaintiffs filed a Consolidated Second Amended Class Action Complaint ("CSACC") with the Court. The CCACC consolidates Plaintiffs' claims in the *Gann*, *Weinberg*, *Costa*, and *Cabebe* cases and alleges a nationwide class of current and former owners of Class Vehicles who purchased or leased the vehicle in the United States or its territories, including Puerto Rico.

38. After execution of the MOU, I participated in dozens of telephone calls and exchanged numerous emails with other Co-Lead Class Counsel, Class Counsel, and NNA's counsel to finalize the language of the Settlement, the notice documents, and other exhibits to the Settlement.

39. In the weeks leading up to execution of the Settlement, my firm and other Co-Lead Class Counsels' firms worked on drafting the motion for preliminary approval of the Settlement and supporting memorandum. During that period, I participated in several calls and exchanged numerous emails with other Co-Lead Class Counsel regarding the preparation of these documents. Several drafts were also exchanged and commented on by Co-Lead Class Counsels' firms. Plaintiffs' motion for preliminary approval of the Settlement was filed on June 6, 2019.

40. On June 21, 2019, the Court entered an order requesting additional briefing on certain aspects of the Settlement. In connection with responding to the Court's questions, Co-Lead

10

Class Counsel retained the services of Lee M. Bowron, ACAS, MAAA. Mr. Bowron is an actuary who specializes in pricing and valuing extended service contracts and warranty extensions. Using the information provided to him by Plaintiffs' counsel (e.g., number of class vehicles, average CVT replacement costs, failure rate, etc.), Mr. Bowron was able to estimate the minimum retail value to the Settlement Class of the extended warranty and reimbursement coverage for this Settlement.

41. After several calls and emails and the exchange of multiple drafts, on July 8, 2019, the parties filed a Joint Supplemental Brief responding to the Court's questions regarding the Settlement. On July 16, 2019, the Court entered an Order, *inter alia*, granting preliminary approval of the Settlement, conditionally certifying the Settlement Class for Settlement purposes only, approving the Long Form Notice and the Summary Notice as to form and content, finding the Notice as set forth in the Notice Program to constitute the best notice practicable under the circumstances, directing KCC to commence the Notice Program, and setting the Final Fairness Hearing for May 11, 2020.

42. Following entry of the Preliminary Approval Order, my firm, other Co-Lead Class Counsels' firms, and NNA's attorneys worked with KCC to ensure Summary Postcard Notice was mailed to Class Members as soon as reasonably possible. As a result of such efforts, KCC was able to send Postcard Summary Postcard notice to Class Members on November 1, 2019— approximately six weeks earlier than December 13, 2019 deadline reflected in the Settlement.

43. On September 30, 2019, the parties jointly moved to move the Final Fairness Hearing from May 11, 2020, to March 6, 2020, and to adjust all associated deadlines accordingly. The Court granted the parties' joint motion on October 1, 2019.

44. As a result of their investigations, discovery, and information exchanged during settlement discussions, Co-Lead Class Counsel obtained significant information regarding the potential cause(s) of the alleged CVT defect, the frequency of the alleged CVT defect, the average cost to replace a Class Vehicle's CVT. That process involved, among other things, speaking to hundreds of Altima owners and lessees regarding their experiences with Class Vehicles, reviewing and analyzing nearly 23,500 pages of documents produced by NNA (excluding warranty data), examining almost 1 million lines of warranty claim-related information provided by NNA for Class Vehicles, reviewing hundreds of consumer complaints submitted to the National Highway Traffic Safety Administration and popular consumer complaint websites, such as CarComplaints.com, and reviewing NNA's technical service bulletins relating to the alleged CVT defect, and reviewing service manuals for the Class Vehicles. Attorneys from Co-Lead Class Counsels' firms also interviewed an engineer from NNA's Total Customer Satisfaction department regarding the root causes of CVT repairs, countermeasures implemented in response to such repairs, and the effects such countermeasures had on improving CVT performance.

45. Shortly after preliminary approval, and even before Class Notice was mailed, my office began receiving telephone calls and emails from Class Members. Attorneys in my office and the offices of Co-Lead Class Counsel have responded to numerous emails and telephone calls, often spending considerable time on the phone answering questions about the Settlement, the settlement benefits, and the claim process. To date, my office has worked with over 200 people. This work will continue throughout the settlement implementation process—likely for several years.

## II. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

46. The Settlement was reached as a result of contested, arm's-length negotiations between experienced class action counsel with the assistance of Hunter Hughes, an experienced and highly respected class action mediator. The April 16, 2019 in-person mediation was contested from beginning to end. It was not until the very end of the day, after more than 8 hours of mediation, that the parties reached agreement of the material terms of the Settlement, except for attorneys' fees, costs, and expenses, and Class Representative service awards, which were agreed upon at a later time. The negotiations were informed by counsels' substantial investigation, review of discovery, and additional informal discovery provided by NNA during the settlement negotiation process.

47. The Settlement provides significant and timely benefits to Class Members. Under the Settlement, powertrain coverage for transmission repairs under Class Vehicles' New Vehicle Limited Warranty is extended by 24 months or 24,000 miles, enabling Class Members to seek under-warranty transmission repairs until 84 months after the first sale of their vehicle or 84,000 miles, whichever occurs first. The also Settlement entitles Class Members to claim and receive reimbursement from NNA of the full amount they actually paid for parts and labor to an authorized Nissan dealer (or up to $5,000 paid to a non-NNA automotive repair facility) to have their Class Vehicle's transmission repaired or replaced (i) during the Warranty Extension Period, or (ii) prior to January 30, 2020, or the vehicle reaching 90,000 miles, whichever occurs first, if an authorized Nissan dealer diagnosed and recommended repair of the vehicle's transmission during the Warranty Extension Period.

48. Under the Settlement, former Class Vehicle owners who experienced two or more transmission repairs while they owned the vehicle (other than software updates and/or

reprogramming) and, if eligible, elected not to submit a claim for reimbursement, will receive a $1,000 Voucher usable towards the purchase or lease of a new Nissan or Infiniti vehicle at an authorized Nissan or Infiniti dealer within nine (9) months of the Effective Date of the Settlement. The Voucher may be used in combination with other discounts, rebates, and the like.

49. NNA's commitment under the warranty extension and reimbursement provisions of the Settlement is uncapped. Plaintiffs' expert, Lee M. Bowron, ACAS, MAAA, estimates the retail value to the Class of the Extended Warranty and reimbursement coverage to be $444,471,000. *See* Declaration of Lee M. Bowron filed in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives. That valuation does not include other components of the Settlement, such as the Vouchers provided to certain former Class Vehicle owners or the costs of settlement administration. *See id.*

50. The deadline to submit a claim is January 30, 2020, or within 30 days of a Qualifying Repair (if that date is later than January 30, 2020). The Settlement Administrator periodically provides a report to Class Counsel listing the current status of notice mailing, opt outs received, reimbursement claim forms received, etc. As of January 23, 2010, the Settlement Administrator's report shows it has received 7,949 claims.

51. The Settlement benefits are excellent considering the risks, costs, and likely duration of continued litigation. This is a complex automotive class action against one of the world's largest car companies. Since the inception of the litigation, NNA has taken the position that it did nothing wrong, that Class Vehicles' CVTs were not defective, and that certification of a litigated class is not appropriate in this case. While I disagree with NNA's views, based on my experience prosecuting complex class actions, including cases involving automotive defects, I recognize that Plaintiffs would face significant risks and delay in continuing to litigate this matter.

14

Case 3:18-cv-00966   Document 103   Filed 01/24/20   Page 15 of 17 PageID #: 1588

Absent settlement, litigating this matter to judgment would entail substantial motion practice, extensive fact and expert discovery, class certification proceedings, further dispositive motions, and trial—a process that would likely take several years. Given the nature of the claims at issue, a costly battle of the experts at class certification and trial would be almost guaranteed and, and on account of the number of Class Vehicles and the potential damages at stake, any decision on the merits would likely be appealed. If Plaintiffs were to lose at class certification, summary judgment, or trial, the possibility exists that the Class could recover nothing. The Settlement guarantees a significant and timely recovery for the Class without the risks, costs, and delay of continued litigation. These considerations support the Settlement is fair, reasonable, and adequate, and should be granted final approval.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 24, 2020, at Chicago, Illinois.

_____
BEN BARNOW

15

Case 3:18-cv-00966    Document 103    Filed 01/24/20    Page 16 of 17 PageID #: 1589

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2020, a copy of the foregoing was filed electronically with the Clerk of the court for the United States District Court for the Middle District of Tennessee using the CM/ECF filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John S. Hicks (BPR No. 010478)
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: 615-726-5600
Fax: 615-744-7337
jhicks@bakerdonelson.com

E Paul Cauley, Jr. (admitted *pro hac vice)*
S. Vance Wittie (*admitted pro hac vice*)
Drinker, Biddle & Reath, LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone: 469-227-8200
Fax: 469-227-8004
paul.cauley@dbr.com
vance.wittie@dbr.com


s/ Ben Barnow
Ben Barnow