IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHEYNNE NORMAN, *et al., individually and on behalf of a class of similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA,<br><br>Defendant. | NO. 3:18-cv-00534<br><br>JUDGE RICHARDSON |
| PATRICIA WECKWERTH, *et al., individually and on behalf of a class of similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA,<br><br>Defendant. | NO. 3:18-cv-00588<br><br>JUDGE RICHARDSON |
| CHRISTOPHER GANN, *et al., individually and on behalf of a class of similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA,<br><br>Defendant. | NO. 3:18-cv-00966<br><br>JUDGE RICHARDSON |

## MEMORANDUM OPINION

Pending before the Court is Defendant Nissan North America, Inc. ("NNA")'s Motion to Enforce Settlement Agreement and Approval Order, which was filed in all of the three above-captioned matters (*Norman, et al. v. Nissan North America, Inc.* (Case No. 3:18-cv-00534), *Gann, et al. v. Nissan North America, Inc.* (Case No. 3:18-cv-00966), and *Weckwerth, et al. v. Nissan North America, Inc.* (Case No. 3:18-cv-00588)). (Doc. No. 125).[1] NNA filed a Memorandum in Support of its Motion to Enforce Judgment (Doc. No. 126) with several attachments (Doc. Nos. 127-1–127-6). Non-party AUL Corporation ("AUL") responded. (Doc. No. 135). NNA thereafter replied. (Doc. No. 143).

## BACKGROUND

This case involves claims brought by a nationwide class of owners and lessees of Nissan vehicles equipped with a Continuously Variable Transmission ("CVT"). (Doc. No. 70 at 7). Plaintiffs allege that the CVT systems in these vehicles ("Class Vehicles")[2] are defective and pose an unreasonable safety risk which requires the transmission to be replaced prematurely. (*Id.*). On July 16, 2019, the Court granted Plaintiffs' Motion for Preliminary Approval in all three matters and preliminarily certified a Settlement Class ("the Class") consisting of "[a]ll current and former

---

[1] For the sake of efficiency, all references herein to document numbers for filings refer to those in *Norman, et al. v. Nissan North America, Inc.* (Case No. 3:18-cv-00534). For each such filing referred to herein, a substantively identical filing was made in each of the other two cases.

[2] The particular model of Nissan vehicle constituting a Class Vehicle varies among the three cases. Plaintiffs in these three cases were ultimately grouped in the following manner for settlement purposes: *Norman* (Case No. 3:18-cv-0534) concerns Nissan Juke vehicles, *Gann* (Case. No. 3:18-cv-0966) concerns Nissan Altima vehicles, and *Weckwerth* (Case. No. 3:18-cv-0588) concerns Nissan Sentra and Versa vehicles. (Doc. No. 71 at 5 (also explaining that these cases were re-captioned accordingly)).

owners and lessees of [Class vehicles] who purchased or leased Class Vehicles in the United States or its territories including Puerto Rico." (Doc. No. 80).

Between the preliminary and final approval stages, NNA received a demand letter from AUL, a third-party company that sells vehicle-service contracts for which customers pay AUL a fee in order for AUL to cover certain repair costs customers may incur after expiration of their manufacturer's warranty. (Riehle Decl., Ex. B to Doc. No. 126). AUL's demand letter asserted that the settlements "contain a glaring omission" by not reimbursing repair costs paid by a service contract provider such as AUL because "[a]s a service provider to Nissan vehicle owners, AUL stands in the shoes of its customers and is entitled to recover in subrogation the fees it paid to fix Nissan's defective product." (*Id.*). AUL did not intervene in the present case.

On March 10, 2020, the Court entered, in each of the three actions, a Final Approval Order and Judgment, whereby the Court approved a class settlement and dismissed with prejudice claims brought by the putative class. (Doc. No. 123). The Court's order did the following: (1) provided that each Class Member who had not opted out was bound by the terms of the Settlement Agreement and released and discharged NNA from all "Released Claims" (Doc. No. 123 at ¶¶ 13-14), defined in the Settlement Agreement (Doc. No. 71-2 at ¶¶ 34, 103) to include all claims "based upon or in any way related to transmission design, manufacturing, performance, or repair of Class Vehicles, including but not limited to all claims asserted in" this case; (2) permanently enjoined Class Members "and their successors and assigns" from pursuing "in any forum" "either directly or indirectly" any Released Claim (Doc. No. 123 ¶ 15); and (3) retained continuing exclusive jurisdiction over "any suit, action, proceeding or dispute arising out of or relating to [the Final Approval Order] and the Settlement Agreement, or the applicability of the Settlement Agreement"

including any action "in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action." (*Id.* at ¶ 18).

Following final approval, AUL sued NNA in California state court (*A.U.L. Corp. v. Nissan North America, Inc.*, Case No. 20CV000362 (the "California Suit")) (*see* Complaint, Doc. No. 127-1). In the California Suit, AUL seeks payment from NNA related to costs AUL paid under its service contracts to repair NNA vehicles equipped with an allegedly defective CVT. A total of 712 of the vehicles for which AUL seeks to recover repair costs in the California Suit are Class Vehicles that were repaired for members of the federal Class (with three of these 712 vehicle owners having opted out of the Class Settlement). (Doc. No. 126 at 17–18 (citing Riehle Decl. (Doc. No. 127) at ¶¶ 7–8)). AUL's claims include a subrogation claim based on the theory that "customers of AUL who own or lease Nissan vehicles have suffered losses" including "associated repair costs" by virtue of the alleged CVT defect and that "AUL sustained losses in covering the cost of CVT repairs" "in full satisfaction of the claims of its customers" (including members of the Settlement Class) against NNA. (Doc. No. 126 at 8). AUL also brings claims for restitution, equitable contribution, and quantum meruit, which do not specifically invoke a subrogation theory. (Doc. No. 127-1 at 7-8).

On June 23, 2021, Judge Victoria Wood stayed the California Suit on the grounds that this Court retains jurisdiction to enforce the settlement agreement, stating that this jurisdiction "includes the applicability and scope of the settlement agreements" and that "the federal court [in Tennessee] must first decide whether this litigation falls under its jurisdiction pursuant to the settlement agreements." (Doc. No. 127-6 at 3). In staying the matter, Judge Wood directed NNA to "file, in the federal court within 30 days of [June 23, 2021] a motion to enforce the settlement agreement," noting that a failure to do so would be "treated as a waiver of [Defendant NNA's]

right to seek relief in that forum and a submission to [the California state court's] jurisdiction." (*Id*. at 2).

NNA accordingly filed the present Motion in this Court, which states in pertinent part the following: "NNA brings this motion with the permission and, indeed, pursuant to an Order of Judge Victoria Wood, who is presiding over the California Suit. By Order dated June 23, 2021, Judge Wood granted NNA's Motion to Stay and agreed with NNA that this Court should decide whether the California Suit is barred in whole or part by the Class Settlements this Court approved." (Doc. No. 126 at 6).[3]

The parties do not indicate in the Motion or response thereto any opposition to this Court having proper jurisdiction to rule on the Motion.[4] Likewise, the Court finds that this Motion does properly fall under this Court's jurisdiction. Judge Wood's June 23, 2021 Order explains the relevant jurisdictional grounds: "The federal court in Tennessee made it clear that it retained jurisdiction to enforce the settlement agreements. This jurisdiction includes the applicability or scope of the settlement agreements. Although 712 of the 1,751 vehicles appear to invoke the federal court's jurisdiction, that is not for this Court to decide as the district court has retained jurisdiction on this threshold issue. Likewise, plaintiff's assertion it is not bound by the settlement agreement as it was not a party is a decision for the federal court." (Doc. No. 127-6 at 3).

The apparent basis for Judge Wood issuing a directive to the parties to file the Motion in this Court arises from the Settlement Agreement and the Final Approval Order. The Settlement

---

[3] As discussed below, Judge Wood did not say (and this Court is not purporting to say) whether, if this Court were to find that the California Suit is barred, AUL could sue NNA federal court in Tennessee; that issue is separate and one the Court need not reach herein.

[4] AUL argues only that the Court has no jurisdiction over AUL's state court action. (Doc. No. 135 at 4). AUL does not appear to dispute that the Court has the authority to rule on the Motion and determine whether the Settlement Agreement and Final Approval Order bar the California Suit.

Agreement in each of the three matters states that this Court "shall retain jurisdiction over the Parties . . . with respect to the future performance of the terms of the Settlement Agreement including, but not limited to, whether any claim being asserted in any Court or forum is released by the terms of the Settlement Agreement." (Gann Settlement Agreement at ¶ 108; Weckwerth Settlement Agreement at ¶ 107; Norman Settlement Agreement at ¶ 106). The Final Approval Order issued in each of the three matters states:

> The Parties and Class Members have irrevocably submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out of the Settlement.
> [. . .]
> It is necessary to protect this Court's jurisdiction and ability to enforce this judgment, and also in the best interest of the Parties and the Class Members and consistent with principles of comity, judicial economy and the strong federal policy favoring settlement, that any dispute between any Class Member (including any dispute as to whether any person is a Class Member) and any Released Party which in any way relates to the applicability or scope of the Settlement, or this Final Judgment and Order of Dismissal, should be presented exclusively to this Court for resolution by this Court.
> [. . .]
> Without affecting the finality of this judgment, the Court's retained jurisdiction of this Settlement also includes the administration and consummation of the Settlement. In addition, without affecting the finality of this judgment, the Court retains exclusive jurisdiction of, and the Parties and all Class Members are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court for, any suit, action, proceeding or dispute arising out of or relating to this Order and the Settlement Agreement, or the applicability of the Settlement Agreement. Without limiting the generality of the foregoing, any dispute concerning the Settlement Agreement, including, but not limited to, any suit, action, arbitration or other proceeding by a Class Member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, shall constitute a suit, action or proceeding arising out of or relating to this Order. Solely for purposes of such suit, action or proceeding, to the fullest extent possible under applicable law, the Parties hereto and all persons within the definition of the Settlement Class are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

(Doc. No. 123 at 4, 6).

NNA argues in its Motion that, pursuant to the All Writs Act, 28 U.S.C. § 1651, the Court should "enter an Order confirming that the injunctions it issued in the Final Approval Orders for the three class actions and the Release in the class Settlement Agreements that this Court approved preclude AUL from seeking recovery for repair costs related to the 709 Class Members, in the California litigation or in any other forum." (Doc. No. 126 at 18). NNA goes on to ask this Court to permanently enjoin AUL from asserting its claims in any other litigation "if the Court believes that a specific additional injunction against AUL is warranted." (*Id*. at 19, 23).

AUL argues that, as a non-party to the class action and class settlement, this Court does not have the authority under the All Writs Act to enjoin AUL from bringing its claims in California state court. (Doc. No. 135 at 4). AUL contends that because the California Suit does not "frustrate[] or in any way affect[] the class action settlements," and because AUL "is not a 'successor' or 'assign' of the class action claimants," this Court does not have jurisdiction over its claims. (*Id*. at 4-5).

## LEGAL STANDARD

>The All Writs Act provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, courts' power to enjoin state court proceedings under the All Writs Act is substantially limited by the Anti-Injunction Act, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except" (1) "as expressly authorized by Act of Congress, or" (2) "where necessary in aid of its jurisdiction, or" (3) "to protect or effectuate its judgments." 28 U.S.C. § 2283; *see Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 844 (6th Cir. 2009). The three exceptions are "narrow" and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)).

>*Jones v. Elite Emergency Services, LLC*, 2016 WL 836630 at *4 (M.D. Tenn. 2016).

"[P]rinciples of equity, comity and federalism oblige federal courts to act with great restraint, even

where the power to grant an injunction has been found to lie within one of the exceptions to the Anti-Injunction Act[;]" "[i]f there is any doubt as to the propriety of the injunction, it should not be issued." *Silcox v. United Trucking Serv., Inc.*, 687 F.2d 848, 850-851 (6th Cir. 1982).

## **DISCUSSION**

NNA's Motion invokes the All Writs Act generally and without specifically mentioning any of the three exceptions to the Anti-Injunction Act. It appears most likely, however, based on the case law cited by NNA, that NNA has in mind the third exception to the Anti-Injunction Act (the "relitigation" exception). (*See* Doc. No. 126 at 19 ("AUL is attempting to frustrate the injunctions in the Court's Final Approval Orders, as well as the terms of the Settlement Agreements[.]")). But because the second exception to the Anti-Injunction Act (the "necessary in aid of" exception) arguably could also apply, the Court will address the applicability of both the second and third exceptions to the Anti-Injunction Act.[5]

As indicated above, the issue here is whether this Court should enjoin AUL from proceeding in the California Suit. It appears that Sixth Circuit case law has not addressed this kind of issue involving similar circumstances. But in *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831 (9th Cir. 2005), the Ninth Circuit considered a district court ruling made pursuant to the All Writs Act in a situation very similar to the present matter. The Ninth Circuit summarized the procedural background and the Court's resulting decision as follows:

> Lester Building Systems and its affiliate, Lester's of Minnesota, Inc. (collectively "Lester"), appeal an order permanently enjoining entry of judgment on a portion of a jury verdict rendered in favor of Lester and against Louisiana–Pacific Corporation ("L–P") in Minnesota state court. *In re Louisiana–Pacific Inner–Seal Siding Litigation,* 234 F. Supp. 2d 1170 (D. Or. 2002). The district court exercised its authority under the All Writs Act, 28 U.S.C. § 1651, to partially enjoin entry of the

---

[5] NNA does not invoke, nor does the Court find applicable, the first exception to the Anti-Injunction Act, which would apply only where Congress has expressly authorized jurisdiction (and no party has here suggested that any act of Congress is relevant to the present dispute).

judgment on the ground that the state court award was inconsistent with the settlement reached in a prior nationwide class action involving L–P and over which the court retained jurisdiction. We conclude that the injunction violates the Anti–Injunction Act, 28 U.S.C. § 2283, and reverse.

*Id*. at 834. Lester, the entity bringing the state lawsuit, was not a class member in the federal action and was not a party to the federal settlement agreement. The district court held that the injunction was proper under the second and third exceptions to the Anti-Injunction Act, and the Ninth Circuit reversed. *Id*. at 842.

Exception two: "necessary in aid of"

The Ninth Circuit first rejected the district court's decision that the injunction was proper under the "necessary in aid of" exception to the Anti-Injunction Act, which authorizes injunctive relief "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers,* 398 U.S. 281 at 295 (1970). The Ninth Circuit found this exception to be inapplicable because:

> the state court action did not threaten the district court's jurisdiction over the Inner–Seal Siding litigation. By the time that the court issued the injunction, the Inner–Seal Siding class action had long since been resolved. Indeed, the district court had several years earlier approved the settlement and entered final judgment. Because the litigation was over, the state court action could not have interfered with the district court's consideration or disposition of the class claims. *Cf. Alton Box*, 682 F.2d at 1271. Nor could it have interfered with the court's continuing jurisdiction over the settlement. The membership of the class was fixed, the parties' respective rights and liabilities were resolved, the settlement fund had been established and claims were being paid. Lester did not seek to join or undo the class, contest the payment of funds to class members or make a claim on the settlement fund. Although the state court litigation arose from the same facts as the class action, an "injunction cannot issue to restrain a state court action" simply because it involves "the same subject matter at issue before the federal court." *Id*. at 1272; *accord Bennett*, 285 F.3d at 807. Instead, an injunction is "necessary in aid of" the court's jurisdiction only when it is required to preserve the court's jurisdiction. *See Atlantic Coast Line*, 398 U.S. at 295, 90 S. Ct. 1739; *Bennett*, 285 F.3d at 806–07. Because the state court action did not seriously impair the district court's flexibility and authority to decide the Inner–Seal Siding litigation or enforce the settlement agreement, an injunction was not necessary to preserve the court's jurisdiction. *See, e.g., Alton Box*, 682 F.2d at 1271–73.

*Sandpiper*, 428 F.3d. at 844.

The Court embraces this reasoning, and it applies here. The federal litigation is done and over. The Settlement Agreement has been finally approved, and the parties' rights and liabilities have been resolved. The settlement fund has been approved and claims have been paid. AUL does not "seek to join or undo the class, contest the payment of funds to class members or make a claim on the settlement fund." An injunction enjoining the California Suit is thus unnecessary to preserve this Court's jurisdiction, decide the federal litigation, or enforce the settlement agreement.

However, NNA claims that AUL's subrogation theory presents a unique circumstance (which NNA would likely argue distinguishes the present case from *Sandpiper*). NNA claims that because AUL brings claims that are derivative of the claims of certain Class Members who had a contract with AUL, the present scenario is more akin to an actual Class Member attempting to bring a claim in state court that was already litigated in the federal class-action. NNA refers to this concept as AUL "standing in the shoes" of these Class Members. But as far as the "necessary in aid of" exception to the Anti-Injunction Act is concerned, AUL is a non-Class Member who was not subject to the class action (and did not intervene), so AUL's state court case in no way interferes with this court's jurisdiction over and disposition of the original class action suit. And, as emphasized by the *Sandpiper* court, this class action is not at a "sensitive" stage; it has already reached final judgment, so it is not somehow imperiled by the state litigation. *Id*. at 845 (explaining that temporarily enjoining state proceedings would be more appropriate during the "delicate and transitory process of approving a settlement agreement" in concurrent federal proceedings, as "a competing state class action covering a portion of the federal class" would "threaten[] the district court's ability to resolve the litigation."). Thus, the "necessary in aid of" exception does not apply, and the Court cannot and will not enjoin the state proceedings pursuant to this exception.

Exception three: the "relitigation" exception

The Ninth Circuit in *Sandpiper* also rejected the district court's decision that the injunction was proper under the "relitigation" exception to the Anti-Injunction Act, which permits a federal court to enjoin state proceedings when necessary "to protect or effectuate its judgments." 28 U.S.C. § 2283. The Ninth Circuit held that the relitigation exception was inapplicable because the Minnesota lawsuit did not challenge the res judicata effect of the federal class settlement, and found that it was "significant" that "Lester was not named as a party to the class action and was not a member of the nationwide class [. . .] nor were Lester's interests sufficiently parallel to the class members' interests such that privity could be implied." *Sandpiper*, 428 F.3d. at 848. In reaching this conclusion, the Court invoked the general rule that a third-party is not "bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process"; therefore, "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Id.* at 848–849 (internal citations omitted). But if a third-party stands in "privity"[6] to a class member,

---

[6] The Ninth Circuit in *Sandpiper* did not expressly articulate what specifically it meant by the terms "privity" or "in privity." Relevant to that point, however, the Court did state (in a footnote) the following:

> Relying on our decision in *Trevino v. Gates,* 99 F.3d 911 (9th Cir. 1996), the dissent contends that Lester and its class member customers were in "virtual" privity because Lester, "[i]n essence, ... sought to serve as a conduit for its customers by obtaining additional damages on their behalf." *Post* at 864. We disagree. In *Trevino,* we found sufficient privity of interest between a child and her grandmother with respect to the narrow issue of the amount of punitive damages to be awarded for the wrongful death of the child's father because the issues and the interests of the parties in the separate actions were "identical" and the child and her grandmother enjoyed "a familial relationship," which was "an important factor" in finding privity. 99 F.3d at 933–34. *Trevino* is readily distinguishable. For starters, there was no familial or legal relationship, express or implied, between Lester and

that third-party may properly be bound by a judgment in which the class member is a party. Thus, where privity exists between a third-party and a class member to a federal action, the relitigation exception would apply and allow a federal court to prevent a third-party from relitigating in state court claims brought by the class member in a federal action.

> its class member customers, and Lester did not control the class members in the prior action or succeed to the class members' interests. Moreover, Lester's interests and the interests of its class-member customers were similar only in the limited sense that both Lester and its customers wanted the buildings constructed with Inner–Seal Siding to be repaired. *Cf. Kerr‑McGee Chem.,* 816 F.2d at 1180–81. According to Lester, however, moral obligations and business realities compelled it to repair the damaged buildings with or without compensation from L–P. Lester was also motivated to repair the defective siding by a desire to rehabilitate its tarnished image and rebuild its goodwill. From Lester's perspective, then, the repair costs claim was far more about making itself whole than reimbursing customers. *Cf. Frank,* 216 F.3d at 852–53; *Kerr‑McGee Chem.,* 816 F.2d at 1180–81. Lester's financial and imagerelated [sic] concerns were obviously not represented by the class members in the prior action. *Cf. Frank,* 216 F.3d at 852–53; *Kerr‑McGee Chem.,* 816 F.2d at 1180–81. Finally, the issues litigated in the two actions are not "identical." In the federal action, the class members sued and recovered for their injuries, while Lester, in the state court action, sued and recovered for its injuries. The mere fact that both injuries have the same root—defective Inner–Seal Siding—does not mean that both issues are identical.

*Sandpiper*, 428 F.3d at 849 n.25.

The Court can thus conclude from this footnote from *Sandpiper* that the Ninth Circuit meant "privity" to require something more than the third party seeking to obtain additional damages on behalf of its customers. Instead, the third party must have some stronger relationship to the class member. Here, like Lester in *Sandpiper*, AUL did not have a familial or legal relationship with the federal Class Members who possessed a contract with AUL, and AUL did not control these Class Members or succeed their interests. And as discussed further below, as with the interests at issue in *Sandpiper*, AUL's interests and these Class Members' interests are not identical (as opposed to merely *similar* in the limited sense that they both want(ed) compensation related to defective Nissan vehicles). True, the alleged injuries of AUL may have the same "root" as the injuries as the injuries of the relevant Class Members, but what matters is that AUL is seeking recovery for *its* own injuries, while the Class Members sought recovery for *their* own injuries. The Court thus can conclude that AUL and the relevant federal Class Members are not in privity in the sense that *Sandpiper* used the term. *Sandpiper*'s view of the relevance of "privity" as thus defined, and *Sandpiper's* reasoning as a whole, is sound and so the Court chooses to follow *Sandpiper*.

Applying this rule to the current matter, here, like Lester, AUL is a "stranger" to the federal class proceedings and settlement. *Id*. at 849. AUL was not a party to the federal class action, is not a federal Class Member, and did not seek to intervene in the federal action. However, *Sandpiper* suggests that to the extent that privity exists between AUL and certain Class Members, the relitigation exception would apply. NNA's argument that AUL "stands in the shoes" of the particular federal Class Members who had contracted with AUL is thus particularly relevant to the "relitigation" exception.

As a preliminary matter, NNA at times misses the mark by focusing on whether the *claims* brought in the California Suit were already litigated in the federal case rather than focusing whether privity exists between AUL and the federal Class Members who had contracts with AUL.[7] But even if AUL brought the very same claims that were litigated in the federal class action, the "relitigation" exception would still not bar the state court proceedings if the interests of AUL and the relevant federal Class Members are not sufficiently similar (i.e., if privity does not exist between them). Instead, the proper focus is whether the derivative nature of AUL's claims renders AUL's interests so sufficiently similar to the federal Class Members with AUL contracts such that privity can be implied, thus triggering the "relitigation" exception.

NNA points to several reasons why (according to it) privity exists.[8] First, NNA refers to AUL's January 23, 2020 demand letter. (Doc. No. 127-2). NNA claims that in this letter, AUL

---

[7] *See*, *e.g.*, Doc. No. 126 at 20 ("However, as AUL's California Complaint concedes, all claims related to the alleged CVT defects in the Class Vehicles were recently adjudicated to a final judgment in three related consumer class actions in the Middle District of Tennessee." (internal quotations omitted)).

[8] NNA does not explicitly refer to the concept of privity using that precise term, nor does NNA expressly refer to the relitigation exception. Instead, NNA generally refers to the "derivative" nature of AUL's claims and the concept of AUL "standing in the shoes" of the federal Class Members as providing a grounds for enjoining the state proceedings pursuant to the All Writs Act.

"concedes that AUL's claims are derivative of claims held by Class Members" (Doc. No. 126 at 20) because AUL states in the letter that "AUL stands in the shoes of its customers and is entitled to recover in subrogation the fees it paid to fix [NNA]'s defective product." (Doc. No. 127-2 at 3). While at first glance it does seem like this statement from AUL itself would preclude AUL from denying that privity exists between AUL and the Class Members who had contracts with AUL, AUL's demand letter takes care to distinguish between AUL and these Class Members. In the demand letter, AUL describes its relationship to the vehicle owners subject to the federal action as follows:

> AUL is a leading provider of vehicle service contract programs. It provides car owners with protection for certain covered parts, including transmissions, after the expiration of their vehicle's manufacturer's warranty. When a car covered by an AUL vehicle service contract has a broken or defective qualifying part, AUL covers the cost of repair.
> [. . .]
> The proposed settlements [. . .] reimburse consumers' actual repair costs, extend the transmission warranty for qualifying cars by two years or 24,000 miles, and offer former owners credits toward new vehicles.
> [. . .]
> The proposed settlements, however, contain a glaring omission for one specific kind of injury: they purport to exclude the cost of repairs covered by any vehicle service contract. In each proposed settlement, the "criteria for reimbursement" excludes repair costs paid for by "an extended warranty or service contract provider."

(Doc. No. 127-2 at 2–3). Thus, based on AUL's description of its relationship to the customers involved in the federal action, AUL's interests are *not* sufficiently parallel to the relevant Class Members. In fact, one might argue that there is no overlap at all in AUL's interests and the interests of a Nissan vehicle owner considering joining the federal class action. That is because if a Nissan owner's CVT-related repair costs were already covered by AUL, the owner would have no reason

---

The Court views these arguments by NNA to fall under the general notion of privity between AUL and the federal class.

to be—would have nothing to gain from being—a part of the Class, as the owner would be paid nothing under the class settlement (due to the settlement excluding the reimbursement of repair costs paid for by "an extended warranty or service contract provider" such as AUL). Thus, despite AUL stating that it "stands in the shoes" of its customers, this statement made in AUL's demand letter does not provide much help to establish privity between AUL and these Class Members. In short, AUL does not really "stand in the shoes" of the Class Members who are its customers; NNA's contention that it does so is not supported by the actual interests of AUL and the relevant Class Members.

NNA's own response to the demand letter also undercuts its position. In its letter dated February 7, 2020, NNA states that "AUL is not a class member and lacks standing to object" to the settlement. (Doc. No. 127-3 at 3). NNA goes on to state that "AUL is not seeking greater benefits or protections for actual class members" and that "there is no support for the theory that AUL can supplant the rights of class members." (*Id.*). This position runs directly contrary to NNA's position in its Motion that AUL's interests and claims are directly aligned with those of Class Members with AUL contracts. NNA's own prior position that AUL lacks the ability to object to the federal settlement thus suggests that its current position (that AUL cannot now bring its claims in a separate forum) is wrong.

NNA also argues that the nature of AUL's state law claims are purely derivative, in that the claims "seek recovery for amounts AUL allegedly paid on behalf of Class Members for post-warranty CVT transmission repairs to Nissan vehicles pursuant to AUL's service contracts." (Doc. No. 126 at 20). NNA notes that AUL's claims in the California Suit specifically "seek[] recovery for sums that it has paid for CVT repairs for [C]lass [V]ehicles identified in the Class Actions." (*Id.*) (internal quotations omitted). If indeed AUL's claims were purely derivative and based solely

on a theory of subrogation, NNA's argument would have more merit than it would have if AUL asserted non-derivative claims. That is, if AUL's claims assert nothing more than rights derivative of the Class Members with AUL contracts, AUL's interests would be more similar to those of these Class Members, thus making it more likely that privity could be implied.[9]

Unfortunately for NNA, this is not the case. In the California Suit, AUL brings four claims: Claim I: damages in subrogation; Claim II: restitution; Claim III: equitable contribution; and Claim IV: quantum meruit. (Doc. No. 127-1 at 7–8). Claim I, by its nature as a subrogation claim, is necessarily derivative in that it seeks compensation based on the losses suffered by Nissan vehicle owners. Claims II, III, and IV, however, are not based on a theory of subrogation. In these claims, AUL seeks compensation for losses it independently suffered as a vehicle service contract provider based on the amount it paid for repairs related to the CVT defect. AUL notes specifically that NNA excluded vehicle service contract providers such as AUL from settlements with consumers regarding the CVT defect. The interests claimed by AUL through these three causes of action,

---

[9] AUL argues that even if it were purely a subrogee, asserting only rights derivative of the Class Members with which it had contracts, a "well-settled exception" has been established that "a tortfeasor cannot knowingly exclude the insurer from a voluntary settlement and then claim the release bars a subsequent action by the insurer." (Doc. No. 135 at 11 (quoting *Allstate Ins. Co. v. Mel Rapton, Inc.*, 77 Cal. App. 4th 901, 912 (2000)). AUL argues that contrary to this principle, "[NNA] seeks to bind AUL to a settlement that it was not a party to, did not assent to, was expressly excluded from, and that would, if applied to AUL, extinguish its claims. The law is not that unfair, nor does it reward a tortfeasor's effort to shift the price of its damage to others." (Doc. No. 135). This line of reasoning misconstrues NNA's Motion and confuses what would result if the Court were to grant the relief NNA seeks. NNA's Motion concerns only whether AUL has the right to bring its claims in the California Suit. Put differently, NNA seeks only a ruling from this Court declaring that if AUL wants to bring claims against NNA "seeking recovery for repair costs related to the 709 Class Members," it must do so in federal court in Tennessee. (Doc. No. 126 at 23). Certainly, NNA would likely make the argument in response to any suit filed by AUL in this Court that AUL's claims are precluded by the Class Settlement. At that juncture, it would be appropriate for AUL to raise the exception articulated in *Allstate*. But because the present Motion concerns only jurisdictional issues related to AUL's ability to bring claims related to the federal Class Settlement in the California Suit, the Court will not determine whether the *Allstate* exception applies to AUL's claims.

while related to the interests of the Class Members who are AUL customers, are not identical to the interests of these Class Members, and thus privity cannot be established by virtue of the causes of action asserted by AUL in the California Suit.

Finally, NNA points to Paragraph 15 of the Final Approval Order, which states: "Members of the Settlement Class *and their successors and assigns* are hereby permanently barred and enjoined from asserting, commencing, prosecuting or continuing to prosecute, either directly or indirectly, any Released Claim against any of the Released Parties in any forum, with the exception of any former Class Members who have duly opted out of the Settlement Class." (Doc. No. 123 at ¶ 15) (emphasis added). NNA argues that by asserting subrogation claims that are derivative of the Settlement Class, AUL falls under this category of "successors and assigns." (Doc. No. 126 at 22). In particular, NNA asserts that AUL is an "assignee of the Class Members' claims." (*Id*.). NNA supports its contention that AUL is an assignee by reiterating AUL's statement in the demand letter that "AUL stands in the shoes of its customers." (*Id*.). Plaintiff responds that AUL is not a "successor" or "assign" of its customers. (Doc. No. 135 at 12). Plaintiff supports this position by again emphasizing NNA's position in response to AUL's demand letter that "AUL [was] not a class member, had no standing to participate in the settlement, and was not seeking benefits or protections for actual class members." (*Id*. (internal quotation marks omitted)). AUL also argues that the relief it seeks in the California Suit is not as a "successor" or "assign" of the class members, but instead is "direct relief in the form of reimbursement for payments it made to fix malfunctioning Nissan transmissions, for which Nissan was responsible." (*Id*. at 13).

Even if AUL reasonably could be construed to be an "assignee" of certain Class Members in relation to its subrogation claim (Claim I), the Court cannot accept NNA's assertion that AUL is an assignee of the Class Members with AUL contracts for all purposes relevant here. As

explained above, three of AUL's four claims seek relief based not on a theory of subrogation, but instead on grounds in which AUL does not "stand in the shoes" of these Class Members. Further, NNA has not pointed to any particular provision of a contract between AUL and its customers in which vehicle owners assign their rights to AUL. Without more, NNA cannot show that AUL falls under the category of "successors and assigns" of the Class Members such that the Final Approval Order bars AUL from bringing its claims in California state court. Therefore, no injunction of AUL is appropriate; and alternatively, even assuming arguendo that the Court could find grounds to enjoin AUL as to Claim I, no injunction as to the other three claims would be appropriate.

Because AUL is not a successor or assign of any Class Members in this action, and because AUL lacks privity to any Class Members, no exception to the Anti-Injunction Act gives this Court authority pursuant to the All Writs' Act to enjoin the California Suit. AUL has the right to bring its claims in the California Suit regardless of this settled federal class action, and this Court cannot and should not interfere with AUL's right to do so.

## CONCLUSION

For the reasons set forth above, NNA's Motion to Enforce Judgment will be denied in each of the three above-captioned cases. An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE